IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEVERLY FARLEY,

       Plaintiff,

vs.                                                                No. CIV  05-1219 JB/LFC

MICHAEL O. LEAVITT, SECRETARY
of the U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES, and CARLA
BAHA-ALCHESAY, in her individual and
official capacity, and TIMOTHY BEGAY
in his individual and official capacity, and
SUZANNE KRAUSE, in her individual
and her official capacity.

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Dismiss Count IV of Plaintiff's

Claims Pursuant to Fed. R. Civ. P. 12(b)(1), filed June 13, 2007 (Doc. 41).  The Court held a hearing

on the motion on November 26, 2007.  The principle issues are: (i) whether the Court should convert

the Defendants' Motion to Dismiss into a Motion for Summary Judgment; and (ii) whether the Court

lacks jurisdiction over Plaintiff Beverly Farley's retaliation claims because she failed to exhaust her

administrative remedies regarding those claims.  The Court will not convert the Defendants' Motion

to Dismiss into a Motion for Summary Judgment, and because Farley failed to exhaust her

administrative remedies, the Court will grant the motion to dismiss.

## FACTUAL BACKGROUND

The Northern Navajo Medical Center in Shiprock, New Mexico, currently employs Farley

as a Registered Nurse.  See Complaint for Violations of 42 U.S.C. Section 1981 & 1985, and

Employment Discrimination of the Basis of Race and Retaliation ¶ 12, at 3,  filed November 22, 2005 (Doc. 1)("Complaint").  In December of 2003 Farley began to have an affair with a non-Native American physician.  See id. ¶ 13, at 3.  On or about December 13, 2003, Farley's husband distributed a flyer at the Medical Center telling about the romantic relationship between his wife and the physician. See id.  ¶ 16, at 3.  After the distribution of the flyers, Farley began to believe that people at the Medical Center were treating her differently because of the affair.  See id.  ¶ 17, at 3. Farley alleges that she went to Timothy Begay, an Equal Employment Opportunity ("EEO") counselor at the Medical Center, in March of 2004, and informed him that she was being discriminated against and wanted to file a charge of discrimination.  See id. ¶¶ 22-23, at 4.  Farley contends that Begay told her he would not file any charge of discrimination for her and told her that she should not be "messing around with [a] non-bargaining unit employee." Id. ¶ 24, at 4.  Farley contends that Begay would not initiate a complaint for her until June 9, 2005.  See Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ¶ 2, at 2.

On June 9, 2005, Farley contacted  Begay to complain about alleged discrimination in the workplace.  See Memorandum in Support of Motion to Dismiss Count IV of Plaintiff's Complaint Pursuant to Fed. R. Civ. 12(b)(1) ¶ 2 at 3, filed June 13, 2007 (Doc. 41)("Motion to Dismiss Count IV").  Begay represents that, on that day, he and EEO counselor Marie Bedoni interviewed Farley for the purpose of identifying her claims and bases of alleged discrimination.  See Declaration of Timothy Begay ¶ 4 at 2  (executed May 16, 2007)("Begay Declaration").  Begay represents that at the beginning of the June 9, 2005  interview, Farley was provided with a tri-fold EEO brochure which identified those groups protected under Title VII.  See Begay's Declaration ¶ 4, at 2-3.

Begay contends that Farley was asked to circle the protected group or groups upon which

her claims were based.  See id.  "Plaintiff circled race and wrote other, marital status."  Id.  Begay contends that, during the interview, Farley confirmed that her claims of discrimination were based solely on race and martial status, and at no time during the interview did she allege to be the victim of reprisal or retaliation.  See id. ¶ 4, at 3.

On June 20, 2005, Farley submitted a letter to Begay and to Bedoni describing her claims in greater detail and identifying the bases of alleged discrimination.  See Motion to Dismiss Count IV ¶ 4, at 3.  In her letter, Farley again alleged discrimination on the basis of race and marital status.  See Begay Declaration ¶ 5, at 3.  Farley points out, however, that she mentioned in her letter that her supervisor told her that Begay had told the supervisor that Farley was filing a complaint against her.  See Plaintiff's Response ¶ 3, at 2. Farley represents that because her supervisor spoke to her in a harsh voice and then did not speak to her again, the supervisor's alleged behavior constitutes evidence that Farley complained about retaliation in her EEO charge. See id.

Begay and Bedoni completed their counseling report on June 23, 2005.  See Begay Declaration ¶ 6, at 3.  The Report indicated that the basis for the alleged discrimination was race and marital status.  See Motion to Dismiss Count IV, Exhibit E to Exhibit 1, Equal Employment Opportunity Counselor's Report,  at 2 ("EEO Counselor's Report").  On the same page of the Report, under the category "issues alleged," the following boxes were checked: (i) assign/duties; (ii) disciplinary action; (iii) duty hours; (iv) harassment (nonsexual); (v) harassment (sexual); (vi) reassignment directed; (vii) time & attendance; (viii) training; (x) terms/conditions of employment; (xi) reasonable accommodation; (xii) other-marital status. See id. Under section F, titled "Narrative Explanation Claim(s) of Discrimination," the report states, in part: "Complainant (Beverly Farley) believes management (Suzanne Krauss) in the Operating Room, Shiprock Indian Hospital (Navajo

Area Indian Health Services) is discriminating against her on the bases of: race and marital status, the creation of a hostile work environment." EEO Counselor's Report at 3. Below this entry are specific issues and concerns that Farley shared with the two EEO counselors. See id.

On June 24, 2005, Begay and Bedoni provided Plaintiff with two copies of the Report, a written statement of her rights and responsibilities regarding the EEO complaint process, and a written Notice of Right to file Discrimination Complaint. See Motion to Dismiss Count IV ¶ 6, at 4. On July 7, 2005, the Department of Health & Human Services ("Department") sent a letter to Farley, acknowledging receipt of her EEO complaint. See id. ¶ 7, at 4. The EEO manager, David Thompson, accepted Farley's June 20, 2005 letter as her EEO complaint because it complied with the provisions of 29 C.F.R. § 106(c). See Motion to Dismiss Count IV, Exhibit 2, at 1-2, Declaration of David Thompson (executed May 29, 2007).

On July 29, 2005, the Department sent a letter to Farley seeking clarification of her claims. See id. ¶ 8, at 4. On August 24, 2005, Farley responded to the Department's letter of July 29, 2005. See id. ¶ 9, at 4. On September 8, 2005, the Department issued its decision dismissing Farley's claims. See id. ¶ 10, at 4.

The Defendants contend that Farley did not amend her EEO complaint before its dismissal. See id. ¶ 11, at 4. Farley contends that her original EEO complaint, as well as her letters of June 20, 2005 and August 24, 2005, included claims of retaliation. See Plaintiff's Response ¶ 11, at 3-4.

## PROCEDURAL  BACKGROUND

On November 22, 2005, Farley filed her Complaint for Violations of 42 U.S.C. Section 1981 & 1985, and Employment Discrimination on the Basis of Race and Retaliation in Federal District Court. See Motion to Dismiss Count IV ¶ 12, at 4. In Count IV, Farley alleges that the Defendants

retaliated against her "for complaining about race discrimination in the workplace and for attempting to file an EEO charge of discrimination." Complaint ¶ 52, at 8.  In February 2007, the Defendants served interrogatories on Farley.  See Motion to Dismiss Count IV ¶ 13, at 5.

The Defendants' interrogatory number one asked Farley to identify "every practice or act upon which her retaliation claim was based." Id.  On March 20, 2007, Farley answered the Defendants' discovery requests.  See id. ¶ 14, at 5.  In Farley's answer to interrogatory number one, Farley identified nine claims of alleged retaliation.  See id.

Retaliation claims three, five, and six arose after the dismissal of Plaintiff's EEO complaint.  See id. ¶ 15, at 5.  The Defendants contend that Farley never initiated pre-complaint counseling for retaliation claims three and five, nor did she file an EEO complaint addressing those claims.  See id. ¶ 16, at 5.  Farley contends that she made complaints about related matters to issue three, the reassignment, and issue five, the failure to rehire, in her June 24, 2005 complaint and in her June 20, 2005 letter to the EEO Counselors.  Farley contends that, on page two of her June 24, 2005 complaint, she indicated that she complained about reassignments and her duty hours.  See Plaintiff's Response ¶ 16, at 4.  Additionally, Farley contends that her June 20, 2005 letter discusses the Defendants giving preferential duty assignments to white staff, and that Navajos were being demoted and not being promoted like whites.  See id.

On June 13, 2007 the Defendant filed a Motion to Dismiss Count IV of Plaintiff's Claim and a Memorandum in Support of the Motion to Dismiss Count IV of Plaintiff's Complaint.  See Motion to Dismiss Count IV of Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. 41); Motion to Dismiss Count IV.  Plaintiff filed a response to Defendants' motion on July 16, 2007.  See Plaintiff's Response.

## APPLICABLE LAW RELATED TO MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir.1994). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. Proc. 12(b)(1). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir.2002)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

Whenever it appears that the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. See Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988). "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir. 1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir. 2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).

On a jurisdictional motion, the Court can look at documents and evidence not contained in the pleadings. The court may consider evidence outside of the pleadings to determine whether subject matter jurisdiction exists: "Rule 12(b)(1) motions generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter

jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir.2004)(quoting Maestas v. Lujan, 351 F.3d 1001, 1013 (10th Cir.2003)).

 "When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" Davis ex rel. Davis v. United States 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)). "'In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].'" Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Holt v. United States, 46 F.3d at 1003). When  "'resolution of the jurisdictional question is intertwined with the merits of the case,' it is necessary to 'convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule 56.'" Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Holt v. United States, 46 F.3d at 1003).

 "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)). "Exhaustion of administrative remedies is 'simply not an aspect of [a] substantive claim of discrimination.' The substantive issue in Plaintiffs' case is whether Plaintiffs were improperly denied CDIB cards, not whether a particular plaintiff has exhausted administrative remedies." Davis ex rel. Davis v. United States, 343 F.3d at 1296 (quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1325).

## LAW REGARDING THE INDIVIDUAL EQUAL EMPLOYMENT OPPORTUNITY COMPLAINT PROCESS

The most common method of administrative exhaustion for federal employees is the individual EEO complaint process. The regulations promulgated by the Equal Employment Opportunity Commission, see 29 C.F.R. Part 1614, and the Commission's Management Directive 110 govern the initial EEO complaint process. Pre-complaint counseling is the first step in that process, see 29 C.F.R. § 1614.105, requiring the aggrieved employee to consult with an agency counselor within forty-five days of the alleged discriminatory act or, in the case of a personnel action, within forty-five days of the effective date of the action. See id.

The Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling.  See 29 C.F.R. § 1614.105(d).  If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. See id. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative. See id.

An agency may dismiss a complaint for a host of reasons as set forth in 29 C.F.R. § 1614.107.  See C.F.R. § 1614.107. The complainant may file a complaint of discrimination within fifteen days following receipt of a "notice of final interview," which signals the completion of the first stage. Id. A complaint must contain a signed statement by the aggrieved which is sufficiently precise to describe generally the discriminatory action. See 29 C.F.R. § 1614.106(c). Only claims raised during pre-complaint counseling (or issues or claims like or related to issues or claims raised

in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency. <u>See</u> 29 C.F.R. § 1614.105(b).

 Once a complaint is filed and accepted, the agency has 180 days to conduct an investigation and to produce a record, comprised of sworn statements or testimony and any relevant documents. <u>See</u> 29 C.F.R.  § 1614.106(e)(2). The complainant is entitled to a hearing, if requested, before an administrative judge. <u>See id.</u>  Following the hearing, the administrative judge issues a recommended decision to the head of the agency. <u>See id.</u> The agency is required to issue its final decision within sixty days either of the request for a decision without a hearing or of receiving the recommended decision from the administrative judge. <u>See</u> 29 C.F.R. § 1614.110.  After the complainant receives the final agency decision, he or she may appeal to the EEOC within 30 days, <u>see</u> 29 C.F.R. § 1614.402(a), or file in district court within 90 days, <u>see</u> 42 U.S.C. § 2000e-16(c).

## <u>TITLE VII AND ITS EXHAUSTION REQUIREMENT</u>

 Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Plaintiff may use direct evidence or  indirect evidence, with a burden-shifting method,  to establish a case under Title VII. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-803 (1973); <u>McCarthy v. Kemper Life Ins. Cos.</u>, 924 F.2d 683, 686 (7th Cir. 1991).

 A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court. <u>See</u> <u>Khader v. Aspin</u>, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC

with the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and of promoting conciliatory efforts. See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). "'[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.'" Welsh v. City of Shawnee, 182 F.3d 934, *2 (10th Cir. 1999)(quoting Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)).

To exhaust administrative remedies, an individual claimant must: (i) first and timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321. Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1). "[A]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." Welsh v. City of Shawnee, 182 F.3d 934, *5 (10th Cir. 1999). See Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir. 1992)(noting the plaintiff's EEOC affidavit contained "explicit reference" to types of discrimination alleged in the complaint); Box v. A & P Tea Co., 772 F.2d 1372, 1375 (7th Cir.1985)(noting that handwritten addendum to typed charge of race discrimination, also suggesting

sex discrimination, was sufficient to permit a judicial claim).

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)(quotation omitted). The filing of a timely charge of discrimination with the EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of employment discrimination under Title VII. See Keller v. Prince George's County, 827 F.2d 952, 956 (4th Cir. 1987); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980)(quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). Without such a filing, federal courts lack subject-matter jurisdiction to entertain Title VII claims, and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-04 (D. Colo.1999).

Before 2002, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge." Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted). The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing." Id. (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799). In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1209. The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. Morgan abrogates the continuing violation

doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1209 (internal citations and quotations omitted).

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).  In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint.  See Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Id. The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter, 347 F.3d at 1211.

"A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." MacKenzie v. City & County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  See Jones v. Sumser ret. Vill., 209 F.3d 851, 853 (6th Cir. 2000)(noting "the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim.").  "We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." Jones v. United Parcel Service, Inc., 502 F.3d 1176, 1186 (10th Cir. 2007).  "[T]he charge must contain facts concerning the discriminatory

-12-

and retaliatory actions underlying each claim." Id.  "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." Id. (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998)).  "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

In Jones v. United Parcel Service, Inc., Jones filed suit against the United Parcel Service for discrimination based on disability, retaliation and failure-to-accommodate.  See 502 F.3d at 1186. Jones was a package car driver.  See id. at 1180.  One of the requirements of a driver was to be able to lift a package weighing up to seventy pounds overhead.  See id.  Jones injured his shoulder at work. See id.  Dr. Legler, UPS' company doctor, examined Jones and released him to work modified duty on the condition that he limit his lifting to twenty pounds.  See id.  Because of his lifting restrictions, UPS told Jones he could no longer work for UPS.  See id.  Jones contacted his union representative who suggested that Jones be examined by another doctor.  See id. Jones followed this advice and was reexamined by his own doctor, who said Jones was able to return to work as a package car driver without restrictions.  See id.  Before returning to work, Jones had to be approved by a UPS doctor.  See id.  The UPS doctor -- a doctor different from the one who originally imposed restrictions -- determined that Jones could return to work without restrictions, but then was later contacted by another UPS employee informing him that another doctor had previously placed a permanent restriction on Jones and asked the doctor to change the restriction.  See id.  The doctor then changed the restriction, which precluded Jones from working for UPS.  See id.  Jones filed a grievance with the union regarding UPS' refusal to return him to work.  See id.  A panel heard Jones' grievance and determined that Jones should get a third doctor's opinion.  See id.  UPS told

the third doctor that he was to solely base his medical opinion on past medical records and not a new examination.  See id. at 1182.  Thus, using only Jones' past medical records, the doctor opined that he could not perform the essential functions of a package car driver.  See id.  Jones filed an additional grievances with the union and an intake questionnaire with the EEOC, alleging UPS discriminated against him.  See id. at 1182.  On the EEO questionnaire Jones checked "no" to the questions, "[d]o you believe that the employer regarded you as disabled?" and "did you advise you employer that you required an accommodation?" Id. at 1186-87.  Jones also failed to check the box on the questionnaire  indicating that he was discriminated against on the basis of race, and failed to check one of the two boxes indicating he was bringing a claim of retaliation.  See id.  Jones did, however, check the box for disability on a different page of the form indicating that his managers made statements prejudicing him regarding race.  See id.  Jones also filled out a portion of the questionnaire that he was instructed to answer only if he believed he was not hired because of a disability.  See id.  In the narrative portion of the questionnaire, Jones described the discriminatory conduct as follows: "Injured on 10/6/03.  On 12-4/-3 Dr. Stech-Schulte placed permanent restriction on me, On 2-3-04 Dr. Michael J. Poppa release[d] me to return to full duty, On 2-9-04 Dr. Legler release[d] me to return to full duty.  After UPS contacted Dr. Legler, Dr. Legler changed restriction on 2/9/04." Id. at 1187. The Tenth Circuit held that Jones' questionnaire constituted a charge and that the facts alleged in his charge created a situation where an administrative investigation of his claim of discrimination based on disability and his claim of retaliation could have reasonably been expected to follow. See id. at 1186.

     The Tenth Circuit held in Jones v. United Parcel Service, Inc. that Jones' allegations that UPS interfered with a medical evaluation to ensure Jones was not released to return to work, that

UPS did not permit Jones to return to work despite releases from two doctors, and that Jones checked a box for retaliation, should have triggered an administrative investigation into whether UPS discriminated against Jones because he was disabled and whether UPS retaliated against him. See id. at 1187.  Thus, the Tenth Circuit held that Jones exhausted his claims of discrimination based on disability and his claim of retaliation.  See id. at 1187.  The Tenth Circuit held that Jones' claim of failure-to-accommodate, however, was not within the scope of his administrative charge.  See id. Because Jones checked "no" in response to the question whether he advised his employer he needed accommodation and because the text of the charge did not contain facts that would prompt an investigation of such a claim, the Tenth Circuit held that Jones did not exhaust his administrative remedies with respect to that claim.  Id.

In Echols v. Today's Staffing, 35 Fed.Appx. 776 (10th Cir. 2002), the Tenth Circuit held that, because Echols' EEOC charge provided no suggestion of a racial discrimination theory, the district court properly dismissed such a theory for failure to exhaust administrative remedies.  See 35 Fed.Appx. at 777.  Echols filed a charge with the EEOC alleging he had been subjected to discrimination based on gender and sexual harassment while on a temporary work assignment.  See id.  In the charge, plaintiff checked only the box marked "sex" discrimination.  See Echols v. Today's Staffing, 2001 WL 1665380, *2 (D.Kan. 2001).  In the narrative portion of his charge, Echols similarly, asserted only gender-related discrimination.  See id. (stating "I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, by being sexually harassed by one of the company's supervisors.  She harassed me and other employees who worked for the company, males and females.").  The EEOC dismissed the charge and issued a right-to-sue letter.  See Echols v. Today's Staffing, 35 Fed.Appx. at 777.  Echols then filed a

complaint in federal district court, alleging racial discrimination.  See id. "When asked in the complaint to provide the facts surrounding his claim of discrimination, plaintiff wrote, '[b]y being harassed by the company employee, by being ignored when complaining about the harassment.'" Echols v. Today's Staffing, 2001 WL 1665380 at *2.  Echols contended that, "because he referred to his race and that of others in his EEOC affidavit, he should not be excluded from alleging racial motive in this lawsuit. At the same time, plaintiff admits that the gravamen of his EEOC allegations relate to sexual, rather than racial, discrimination and harassment." Echols v. Today's Staffing, 2001 WL 1665380 at *2.  In reviewing the plaintiff's EEOC affidavit, the district court found reference to "plaintiff's racial identity only where plaintiff responded to a question on the affidavit form. In the narrative portion, plaintiff did refer to the racial identity of several others, but significantly omitted any reference to the race of the alleged 'harasser.'" Id.  The district court also noted that Echol's EEOC affidavit states that two other employees, one white and one African American, also complained of the "harasser's" conduct. Id.  The district court held that "[s]uch a statement negates any inference of racial discrimination by alleging instances where both whites and blacks were being sexually harassed," and suggests that he only referred to the race of his fellow employees for identification purposes.  Id.  Thus, the district court held that there were no statements in the narrative portion of plaintiff's EEOC charge to rebut his failure to check the race box and justify an inference of race discrimination. See id.  The Tenth Circuit affirmed the district court's decision, holding that Echol's EEOC charge provided no suggestion of his racial discrimination theory, and thus agreed that his claim of racial discrimination should be dismissed.  See Echols v. Today's Staffing, 35 Fed.Appx. at 777.

In Duncan v. Manager Department of Safety, 397 F.3d 1300 (10th Cir. 2005), a former police

officer filed an EEOC charge against the city on April 14, 1998 and checked the box for retaliation. See id. at 1314.  The officer alleged a series of acts before the date the EEOC charge was filed that were supposedly in retaliation for her use of the complaint process. See id.  The Tenth Circuit held that none of the actions alleged by the officer in her EEOC charge were sufficient to support a retaliation claim.  See id.  The Tenth Circuit noted that, in her complaint filed in federal court, the officer alleged an act that was severe enough to support a retaliation claim. See id.  She alleged that she was transferred to the police academy in retaliation for filing her original EEOC charge. See id. The Tenth Circuit noted, however, that, because the officer did not file an additional EEOC charge alleging that specific retaliatory act, she did not exhaust her administrative remedies and thus the district court correctly dismissed her claim for retaliation.  See id.

In Annett v. University of Kansas, 371 F.3d 1233 (10th Cir. 2003), the Tenth Circuit declined to consider Annett's contention that receiving the position of adjunct lecturer versus adjunct professor constituted a retaliation action, because she failed to exhaust her administrative remedies. See id. at 1238.  The Tenth Circuit considered Annett's charge of discrimination filed September 6, 2000 and her "complaint narrative" submitted on May 31, 2000, and found no reference to a distinction between "lecturer" and "professor" as probative of discrimination or retaliation.  Id.  Annett's complaint stated: "I was given an adjunct faculty position, but no Principal Investigator status, which prevents me from obtaining grants."  Id.  Annett's complaint narrative stated: "My own position as an Adjunct Faculty member at KU was downgraded to prevent me from submitting grants that could act as an alternative source of income." Id.  The Tenth Circuit held that it could not conclude "that this sentence represents the distinction between being appointed an adjunct lecturer versus an adjunct professor in 1999 or 2000." Id. Furthermore, the Tenth Circuit

noted that it "lack[ed] jurisdiction to review Title VII claims that are not part of a timely-filed EEOC

charge." Id. (citing Seymore v. Shawver & Sons, Inc., 111 F.3d at 799).

> Previously, we would proceed to examine whether the alleged employment action,
> provided it occurred after the filing of the EEOC charge, was "like or reasonably
> related to the allegations of the EEOC charge." However, our recent holding in
> Martinez v. Potter, has foreclosed this line of inquiry. In Martinez, we abrogated the
> continuing violation exception to our jurisdictional requirements to allege a claim of
> retaliation and held that "unexhausted claims involving discrete employment actions
> are no longer viable." In so doing, we relied on National R.R. Passenger Corp. v.
> Morgan, which concluded that each discrete retaliatory action constitutes its own
> unlawful employment practice for which administrative remedies must be exhausted,
> and we applied Morgan to incidents occurring after an employee's filing of an EEO
> complaint.

Annett v. Univ. of Kansas, 371 F.3d at 1238. (internal quotations and citations omitted). Thus, the

Tenth Circuit dismissed Annett's claim for failure to exhaust administrative remedies.

        In Atkins v. Southwestern Bell Co., 137 Fed.Appx. 115 (10th Cir. 2005), the Tenth Circuit

held that Atkins failed to exhaust her retaliation claim by not including the claim in her formal

charge filed with the EEOC. See id. at 118.  Atkins provided the EEOC with an intake questionnaire

and a sworn supporting affidavit before submitting her formal charge.  See id.  The Tenth Circuit

stated, even "assuming for purposes of this appeal that Plaintiff's intake questionnaire and sworn

supporting affidavit could be deemed the equivalent of a formal charge," because "[p]laintiff's

formal charge, filed approximately ten months after she submitted her intake questionnaire, did not

include any indication that she wished to pursue a retaliation claim or describe any facts that would

support such a claim," she had not exhausted her administrative remedies.  Id.  The Tenth Circuit

held that the omission of such claims in the later-filed formal charge indicated that Atkins had

abandoned this claim. See id.  Thus, the Tenth Circuit  held that Atkins had not exhausted her

administrative remedies. See id.

In Showalter v. Weinstein, 233 Fed.Appx. 803 (10th Cir. 2007), Showalter asserted that the district court erroneously concluded that she did not exhaust her administrative remedies for her claims not expressly stated in her EEOC charge. See id. at 807. The National Archives and Records Administration employed Showalter as a GS-11 Team Lead from October 2001 to May 2002 when she was terminated from her employment. See id. at 804. Showalter, her supervisor, and another employee participated in an internal office mediation with a professional facilitator. See id. After tension among the three increased, Showalter contacted an EEO counselor by e-mail and by telephone. See id. On May 15, 2002, Showalter received a letter advising her that her employment was terminated because of unsatisfactory performance during her probationary period. See id. at 804-805. On May 20, 2002, she spoke with the EEOC counselor again, stating that she believed she was being fired as a result of her contact with the EEO counselor. See id. at 805. On June 4, 2002, the counselor issued a Notice of Final Interview/Right to File a Formal Complaint of Discrimination, stating that Showalter alleged she was discriminated against based on reprisal. See id. On June 24, 2002, Showalter filed a timely formal EEO complaint. See id. On the face of the complaint, she checked the box next to "Reprisal," but did not check any of the other seven boxes. See id. She also identified May 15, 2002, the day on which she received her termination letter, as the date of discrimination. See id. Showalter also attached to her complaint a letter and a long statement explaining that her formal complaint of discrimination was based on "reprisal for participation in protected EEO activity." Id. On July 12, 2002, Showalter submitted a one-sentence letter to the EEO office stating: "I would like to amend my complaint . . . to include as additional bases of discrimination my disability (Crohn's disease; my gender (female); and my race (white, Caucasian)." Id. An EEO counselor spoke to Showalter on November 5, 2002 about her letter. Id.

The EEO counselor then issued an amended counseling report saying that the issues Showalter alleges took place were not discussed during the initial counseling period.  See id.  On January 3, 2003, NARA sent Showalter's counsel a letter indicating that it had identified two issues for investigation (i) whether Showalter was subjected to a hostile-work environment based on her disability, sex, and/or race; and (ii) whether she was terminated based on reprisal for contacting an EEO counselor.  See id. Showalter subsequently filed a complaint in district court.  See id.  The district court held that Showalter's EEO complaint asserted a claim only for reprisal and that her long statement was just an explanation of the details leading up to her termination.  See id.  "The court noted that the EEO counselor characterized Ms. Showalter's July 12 attempted amendment as a claim for hostile work environment," and that, because her race, gender, and disability discrimination claims were not like or related to her original reprisal claim, the amendment did not relate back to her original formal complaint.  Id. at 805-806.  "When an amendment advances a new theory of recovery and the amendment is not like or related to the original claim, regardless of whether it is based on incidents described in the original claim," the amendment does not relate back.  See id. at 806.

On appeal in Showalter v. Weinstein, Showalter alleged that the "proper inquiry in exhaustion cases is whether the agency received adequate notice of the claims." Id.  Showalter relied on dicta from Richardson v. Frank, 975 F.2d 1433 (10th Cir. 1991), a case that the Tenth Circuit believed had readily distinguishable facts.  See 233 Fed.Appx. at 807.  Citing from Richardson v. Frank, Showalter argued that "Title VII is remedial legislation to be construed liberally rather than technically" and that "[t]he procedural requirements of Title VII should not be allowed to become so formidable and inflexible as to preclude the aggrieved employee from receiving relief from

employment discrimination." Id.  The Tenth Circuit pointed out that Showalter

> overlook[ed] . . . the context in which this court made the foregoing statements - they
> were made while the court considered the then-applicable thirty-day time limit
> within which an aggrieved employee was required to bring his or her claim to the
> attention of an EEO counselor.  Specifically, the court in Richardson observed that
> plaintiff's untimely filing was not a jurisdictional bar, acknowledged that his
> circumstances may warrant equitable tolling of the applicable time limitations, and
> rejected the district court's construction of "bring to the attention" to mean "file."
> The court then made the statements upon which Ms. Showalter relies and held that
> whether plaintiff's circumstances warranted equitable tolling was a factual
> determination that prevented the grant of summary judgment. . . . Read in context
> then, that portion of Richardson relied upon by Ms. Showalter does not support a
> holding that she exhausted claims one, two, four, and that portion of claim three that
> did not pertain to retaliatory discharge because her former employer had timely
> notice of each of those claims.  To accept Ms. Showalter's position, that notice is all
> it takes to satisfy the requirements of exhaustion, would be tantamount to ignoring
> the applicable regulatory framework.

Showalter v. Weinstein, 233 Fed.Appx. at 807.

In Denetclaw v. Thoutt Brothers Concrete Contractors, Inc., Civil Action No.

06-CV-00618-WDM-MJW, 2007 WL 2909391 (D.Colo. Sept. 30, 2007) a federal district court in

Colorado determined whether Denetclaw's EEOC charge was sufficient to constitute exhaustion of

his administrative remedies.  See 2007 WL 2909391 at *5.  In Denetclaw's second EEOC charge,

he stated that he was discriminated against on account of his race (Native American), his age (53),

and his sex (male) and checked the boxes for race, age and sex discrimination.  See id.  Denetclaw

also alleged that he was subjected to a hostile work environment and "injun remarks" and "told to

do an Indian rain dance" on hot days.  Id.  The charge listed the date of the discrimination, but did

not specifically list any of the parties involved.  See id.  The district court held that, because

Denetclaw failed to identify the parties, give pertinent dates, or generally describe the practices

complained of, he did not exhaust his administrative remedies regarding his hostile environment

claim.  See id.  Furthermore, the court noted that the charge allegations do not provide sufficient

notice to the EEOC to investigate the claim of hostile work environment.  See id.

## ANALYSIS

The Court will not convert the Defendants' 12(b)(1) motion to a motion for summary judgment, but will continue to treat the motion as one to dismiss for lack of subject-matter jurisdiction.  And, when the Court addresses the exhaustion issue, the record shows that Farley failed to exhaust her retaliation claims.  Accordingly, the Court will grant the Defendants' motion.

## I.  THE COURT WILL TREAT DEFENDANTS' MOTION AS A 12(b)(1) AND NOT AS A MOTION FOR SUMMARY JUDGMENT.

Farley argues that the Court should treat the Defendants' motion as a motion for summary judgment rather than as a 12(b)(1) motion because the Defendants attached additional information to their Memorandum in Support of Motion to Dismiss. See Plaintiff's Response at 5.  While the Court recognizes that there are situations in which the attachment of documents converts a motion to dismiss into a motion for summary judgment, the Court does not believe that this is one of those situations.  Rather, the Court is in agreement with the Defendants that, when a party challenges subject-matter jurisdiction, the Court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts.  See Davis v. United States, 343 F.3d at 1296.  Moreover, "[i]n such instances, a court's reference to evidence outside pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment." Id.  Furthermore, the Court does not believe that resolution of the jurisdictional question in this case is intertwined with the merits of the case requiring the Court to convert the motion into a rule 56 motion.  The Tenth Circuit has held that "[e]xhaustion of administrative remedies is 'simply not an aspect of [a] substantive claim of discrimination,'" thus the Court need not convert this motion into a motion for summary judgment. Id. at 1296.

## II.    FARLEY FAILED   TO ADMINISTRATIVELY EXHAUST HER CLAIMS POSTDATING THE FILING OF HER EEO COMPLAINT.

Farley alleges two retaliation claims regarding incidents that occurred after the date she filed her formal EEOC complaint.  See Plaintiff's Response at 7.  Farley argues that she has exhausted her administrative remedies on these claims, because the Tenth Circuit has decided that a plaintiff's claim in federal court is limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.  See MacKenzie v. City and County of Denver, 414 F.3d at 1274.  In addition to the principle set out in MacKenzie, however, the rules the Tenth Circuit established in Martinez v. Potter also apply to this situation.  See  347 F.3d 1208.

In Martinez v. Potter,  347 F.3d 1208 (2003), the Tenth Circuit noted that the "Supreme Court's pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1209.  The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable.  Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

Martinez v. Potter, 347 F.3d at 1209 (internal citations and quotations omitted).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  National Railroad Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).

In National Railroad Passenger Corp. v. Morgan, the Supreme Court applied this rule to bar

a plaintiff from suing on claims for which no administrative remedy had been sought, when those incidents complained of occurred more than 300 days prior to the filing of the Plaintiff's EEO complaint.  See  Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Id. The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter, 347 F.3d at 1211.

The Tenth Circuit explained how these two principles work together in Jones v. United Parcel Service.  See 502 F.3d at 1186.

> The next step in determining whether a plaintiff has exhausted her administrative remedies is to determine the scope of the allegations raised in the EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC. . . .We emphasize, however, that our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident" of alleged discrimination of retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.

Id.  The Court believes that the Tenth Circuit's explanation of how the two principles work together suggest that an act that occurs subsequent to the filing of the formal EEOC charge would not be included in the scope of the administrative investigation and would constitute its own "unlawful employment practice for which administrative remedies must be exhausted." Id.  Other Tenth Circuit holdings support this conclusion.  See Duncan v. Manager Department of Safety, 397 F.3d at 1314 (affirming dismissal of retaliation claim postdating plaintiff's EEO complaint where plaintiff did not file a separate charge detailing retaliatory act); Annett v. University of Kansas, 371 F.3d at 1238 (noting the exception permitting the employee to sue on acts of discrimination post-EEOC charge

-24-

is no longer viable).  The Court will therefore dismiss Farley's claims of retaliation that arose after

the filing of her EEOC charge for failure to exhaust administrative remedies.

## III.    FARLEY DID NOT EXHAUST HER ADMINISTRATIVE REMEDIES ON HER OTHER RETALIATION CLAIMS.

Farley alleges that she put the agency on notice of her retaliation claims by raising the issues

"of her supervisor altering her duties, assignments, training, time and attendance and the fact that

her supervisor told Plaintiff she knew about the EEO charge and her subsequent treatment by her

supervisor" in her June 24, 2005 EEO Charge and her June 20, 2005 letter.  Plaintiff's Response at

6.  In her response to the Defendants' Motion to Dismiss Count IV,  Farley states that the purpose

of a federal employee filing an EEO claim is "only to provide notice to the agency of the nature of

the claim, and is not an exercise in form over substance." Plaintiff's Response at 6 (citing

Richardson v. Frank, 975 F.2d at 1436).  Farley quotes from Richardson v. Frank:

> EEO complaints are often, as in this case, presented initially by persons without the
> benefit of counsel or the information to be technically knowledgeable. The correct
> inquiry then becomes whether the purpose of the time limit has been met and
> whether the agency was put on adequate notice.  The procedural requirements of
> Title VII should not be allowed to become so formidable and inflexible as to
> preclude the aggrieved employee from receiving relief from employment
> discrimination.

975 F.2d at 1436.

The Tenth Circuit has, however, addressed this specific argument in a similar situation. In

Showalter v. Weinstein, the plaintiff relied on the same language from Richardson v. Frank that

Farley relies upon: the "proper inquiry in exhaustion is whether the agency received adequate notice

of the claims." Showalter v. Weinstein, 233 Fed.Appx. at 806.  The Tenth Circuit stated that the

facts of Richardson v. Frank were distinguishable from the exhaustion requirement facts of cases

today. See id.

Specifically, the facts of Richardson v. Frank involved a thirty-day time limit within which an aggrieved employee was required to bring her claim to the attention of an EEO counselor. See id. The Tenth Circuit in Richardson v. Frank observed that the plaintiff's untimely filing was not a jurisdictional bar, acknowledged that the plaintiff's circumstances may warrant equitable tolling of the applicable time limitations, and rejected the district court's construction of the regulation phrase "bring to the attention" of the EEO counselor to mean that a complaint must be filed with the EEO. Id.  The Tenth Circuit noted that "to accept Ms. Showalter's position, that notice is all it takes to satisfy the requirements of exhaustion, would be tantamount to ignoring the applicable regulatory framework." Id.

In Farley's case, the facts are more similar to those of Showalter v. Weinstein than those of Richardson v. Frank.  The Court, therefore, in following the guidance of the Tenth Circuit in Showalter v. Weinstein, rejects Farley's contention that all that is necessary to exhaust administrative remedies is to put the agency on notice.

The Court believes that there are several factors to consider when determining whether Farley exhausted her administrative remedies on her retaliation claims.  First, the Court notes that Farley did not check the reprisal or retaliation box on the EEO counselor's report. See Defendant's Motion to Dismiss Count IV, Exhibit E.  The only boxes checked under the category "Basis for Alleged Discrimination" were race (American Indian) and other (marital status). Id.  On the same page of the report, under the category "issues alleged," the following boxes were checked: (i) assign/duties; (ii) disciplinary action; (iii) duty hours; (iv) harassment (nonsexual); (v) harassment (sexual); (vi) reassignment directed; (vii) time & attendance; (viii) training; (x) terms/conditions of employment; (xi) reasonable accommodation; and (xii) other-marital status. See id.

The Tenth Circuit has held "[t]he failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." Jones v. United Parcel Service, 502 F.3d at 1186 (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998)). Farley's EEOC counselor's report, therefore, creates a presumption that she was not asserting a claim of retaliation or reprisal. "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." Id.

The Court must look to the text of the report, and Farley's letter from June 20, 2005, the document the EEO considered to be Farley's complaint, to see if she clearly sets forth the basis for her retaliation claims. The Court believes it is proper to look at both the text of the EEO counselor report, and the text of the June 20, 2005 letter, to see if the allegations contained therein would have created a situation where an administrative investigation of Farley's claims of retaliation could reasonably be expected to follow. See Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

In considering the text of the EEO counselor's report, the Court does not believe that the facts alleged would have created a situation that would reasonably cause an administrative investigation of Farley's retaliation claim. Under section F titled "Narrative Explanation Claim(s) of Discrimination," the narrative states in part: "Complainant (Beverly Farley) believes management (Suzanne Krauss) in the Operating Room, Shiprock Indian Hospital (Navajo Area Indian Health Services) is discriminating against her on the bases of: race and marital status, the creation of a hostile work environment." EEO Counselor's Report at 3. Below this statement are other specific issues and concerns that Farley shared with the two EEO counselors. See id. Nowhere in the narrative portion of the complaint does Farley specifically allege a claim of retaliation, state facts that would reasonably cause an administrative investigation of a claim of retaliation, or use any

-27-

words that would clearly suggest a claim of retaliation.

The narrative does not include any mention of Farley's supervisor telling her that she was aware that Farley had filed a formal EEO complaint against her.  The only fact that has anything to do with a prior filed EEO complaint states: "Upper management (Lavenia Diswood, DON) doesn't want to sign the UNION settlement Agreement as of June 2005."  EEO Counselor's Report at 3. While this statement does not specifically mention the filing of a previous grievance, Farley explains that it is so related in her letter of June 20, 2005.  See Letter of June 20, 2005 at 5-6.  The mentioning of such situation is the only aspect of the counselor's report that gives any indication that Farley might be able to file a claim of retaliation.   The remainder of the form, however, indicates that the claims Farley relayed to the EEO counselor were based on race and marital status.  This form appears to acknowledge, and Farley does not directly dispute, that she did not  indicate her intention to bring a claim of retaliation in her pre-charge counseling with the EEO counselors.

Farley elaborates on her prior EEO and grievance filings in her June 20, 2005 letter.  Farley indicates two specific dates -- March 2, 2004 and October 28, 2004 -- on which she claims to have attempted to initiate an EEO complaint.  See Letter of June 20, 2005. Farley indicates that on March 2, 2004: "I attempted to initiate an EEO action through Timothy Begay.  He refused to document my claim or file paperwork, he told me I 'didn't have enough evidence', and he then said, 'besides, you shouldn't be messing around with a non-bargaining unit employee. . . . you don't have a case.'" Letter of June 20, 2005 at 3.

In her June 20, 2005 letter, Farley also explains her October 28, 2004 EEO complaint:

Dr. Miller and I filed an EEO complaint on 10/28/2004 through Julia Claymore of ILUNA with Verlie Fairbanks, who is in charge of EEO and civil rights enforcement at the Navajo Area office.  When no action was taken, and no counselor assigned, Ms. Claymore sent a letter to Mr. John Hubbard, the Navajo area director on

> 1/5/2005 asking for a counselor to be assigned to Dr. Miller and myself. . . . Lavenia Diswood, the DON, has refused to sign the proposed mediation agreement she asked me to prepare in February. . . . Because Ms. Diswood asked me to prepare the agreement based on what we discussed during mediation, and has treated me with respect to this day, I maintain that she did not sign the agreement at the direction of her supervisor, the C.E.O.

Letter of June 20, 2005 at 5-6.  In her description of the facts surrounding her attempt to file an EEO complaint and her filing, Farley does not specifically allege that, subsequent to her attempt to file, or her filing of, an EEO complaint, any of the actions against her by her supervisors and co-workers were retaliation for the filing of her EEO complaint.  Rather, in her letter, she states that the actions alleged are based on other discriminatory factors: "[H]ere is my documentation to support my allegations of discrimination based on race and marital status, the creation of a hostile work environment in the operating room." Letter of June 20, 2005 at 1.  She also states: "[A]ll of this discriminatory activity against myself and Dr. Miller is because I am Navajo, and he is white." Id. at 8.  While Farley states in her letter that she engaged in activity protected under Title VII, she does not indicate that the discriminatory acts she describes are related to her protected actions.

An employer must know of an employee's protected activity to engage in unlawful retaliation.  See Jones v. United Parcel Service, 502 F.3d at 1194-95 (citing Petersen v. Utah Dep't of Corr., 301 F.2d 1182, 1188-89 (10th Cir. 2002)).  Farley alleges only  that her supervisor confronted her on June 8, 2005, indicating that she was aware that Farley had filed an EEO complaint against her with Timothy Begay.  See June 20, 2005 Letter at 9.  Farley does not make any mention of knowledge by her supervisor of her protected Title VII activity on either March 2, 2004 or on October 28, 2004.  See June 20, 2005 Letter at 3-5.  Retaliation for the protected act of filing an EEO complaint could occur only after Farley's supervisor was aware of the complaint.  Regarding the acts of her supervisor after June 8, 2005 through June 20, 2005, the date on which

Farley wrote her letter, Farley did not indicate specific retaliatory acts.  See id.  Rather, Farley

stated: "[S]ince then [the confrontation with her supervisor regarding the EEO complaint] she

[Farley's supervisor] has not even spoken to me once.  I continue to feel threatened by her behavior,

and am afraid she will try to take some sort of action, including physical harm against me." Id.

Farley's charge, therefore, does not allege retaliatory actions by her supervisor after their June 8,

2005 confrontation.

        The Court acknowledges that, although Farley did not say the words "retaliation" or

"reprisal" and failed to check the boxes alleging such, these factors may also be rebutted by the

narrative portion of her charge.  It is also true that, in both the narrative portion of the EEO

counselor's report and in Farley's June 20, 2005 letter, Farley mentions the situation regarding her

October 28, 2004 filing of an EEOC complaint.  Additionally, in her June 20, 2005 letter, Farley

references her March 2, 2004 attempt to file an EEO complaint with EEO counselor Begay.  See

June 20, 2005 Letter at 3.

        The question arises, therefore, whether the mentioning of those attempts to file a complaint

would reasonably set into motion an administrative investigation that would investigate a claim of

retaliation.  Farley's situation has some similarities to that in Jones v. United Parcel Service[1] in

which the Tenth Circuit held that, although Jones did not check all the appropriate boxes for

retaliation as a basis for discrimination,

> the text of the charge describes the conduct underlying Mr. Jones's claim that UPS
> did not return him to work because it regarded him as disabled.  His retaliation claim
> is based on these facts as well.  He claims that UPS acted with a retaliatory, as well
> as discriminatory, motive when it did not permit him to return to work despite the

_____

        [1]The Court notes that neither party cited Jones v. United Parcel Service in their briefing on
this motion.

-30-

releases from two doctors.  The facts contained in the charge therefore describe the conduct underlying both his discrimination and his retaliation claims.  Thus, given the factual allegations contained in the charge and the fact that Mr. Jones checked a box for retaliation, an administrative investigation of Mr. Jones's retaliation claim can reasonably be expected to follow the charge of discrimination.

Jones v. United Parcel Service, 502 F.3d at 1187 (internal citations and quotations omitted). Farley's case is distinguishable, however, in that, unlike Jones, Farley gave no direct indication that she was bringing claims of retaliation.  Although Jones failed to check one of the boxes indicating that he was bringing a claim of retaliation, he checked a second box on a different page indicating that he intended to bring a claim of retaliation.  Taking the checked box into consideration, along with the fact that the facts which Jones alleged in his EEO charge were the facts underlying his retaliation claim, the Tenth Circuit held that Jones had exhausted his administrative remedies, because given the factual allegations, an administrative investigation of Jones' retaliation claim could reasonably be expected to follow his charge of discrimination.  See id. at 1187.

Farley's case is distinguishable.  First, Farley did not check any box suggesting that she was bringing a claim of retaliation.  Second, Farley, through the text of her formal charge, not only failed to give a clear indication that she was bringing a retaliation claim, but created an indication that she was not bringing a claim for retaliation based on her repeated statements that her charges were based on other specific claims.  Her letter begins by stating: "[H]ere is my documentation to support my allegations of discrimination based on race and marital status, the creation of a hostile work environment in the operating room."  Letter of June 20, 2005 at 1.  Again, on page 8 of her letter, Farley states: "All of this hostile and discriminatory activity against myself and Dr. Miller is because I am Navajo and he is white." Id. at 8.  Thus, although similar to Jones in that the facts alleged in Farley's documents to the EEO describe the underlying facts she claims to support her claim of

retaliation, she is different from Jones in that she indicates, on several occasions, that the alleged discriminatory acts are based solely on the fact she is Navajo and Dr. Miller is white.

Additionally, in her letter to the EEO regarding clarification of her letter of June 20, 2005, Farley again failed to indicate that she was bringing a claim of retaliation and stated: "My relationship with Dr. Miller is different than these [other relationships between physicians and nurses in the operating room] because I am Navajo and he is White.  It struck me that this was an EEO issue of race discrimination, so later that day, I went to Timothy Begay's office to try to file an EEO claim . . ." Motion to Dismiss Count IV, Exhibit C, August 24, 2005 Letter at 1.  While this letter is not Farley's official charge, it is an additional document that indicates that Farley was not bringing a claim for retaliation.

While the Court acknowledges the Tenth Circuit instructs that administrative remedies of a claim are exhausted if an administrative investigation of that claim can reasonably be expected to follow the charge of discrimination, the Court does not believe that an administrative investigation of a claim will reasonably follow when the complainant specifically indicates, on multiple occasions, that his or her claims are based solely on other grounds.  Case law indicates that proof capable of overcoming a presumption of failure to check a specific box requires the "text of the charge [to] clearly sets forth the basis of the claim." Jones v. United Parcel Service, Inc., 502 F.3d at 1186.  In this situation, the text of Farley's charge did not clearly indicate that she was bringing a retaliation claim.  In fact, it clearly indicated that she was bringing a complaint on other grounds.

The only suggestion that retaliation was involved was that Farley mentioned she had attempted to file, and filed an EEO complaint on two prior occasions, and that on June 8, 2005 her supervisor confronted her about her most recent EEO complaint.  See Letter of June 20, 2005 at 3-5.

-32-

Regarding the first two attempts to file an EEO complaint, Farley states nothing about her supervisor knowing about the complaint or anything about the discriminatory actions being a result of her attempt to file an EEO complaint. Furthermore, Farley's letter is void of specific acts of retaliation by her supervisor after her supervisor was made aware of Farley's most recent EEO complaint.

The Court does not believe the mere fact that a retaliation claim could exist results in a reasonable investigation of such a claim by the EEO, when the complainant indicates, on multiple occasions, that her claims are solely based on other grounds. See Letter of June 20, 2005 at 1, 8 (stating "here is my documentation to support my allegations of discrimination based on race and marital status, the creation of a hostile work environment in the operating room. . . . All of this discriminatory activity against myself and Dr. Miller is because I am Navajo, and he is white."). Because the purpose of exhausting administrative remedies is to allow the EEO to attempt to solve the problem before entering litigation, the Court will not hold that Farley's claim of retaliation was exhausted when the EEO cannot have reasonably been expected to conduct an investigation on such a claim. Because Farley did not exhaust her administrative remedies on her retaliation claims, the Court does not have subject-matter jurisdiction over those claims and will accordingly dismiss them.

**IT IS ORDERED** that Defendants' Motion to Dismiss Count IV of Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(1) is granted.

_____
UNITED STATES DISTRICT JUDGE

-33-

*Counsel:*

Donald G. Gilpin
M. J. Keefe
Gilpin & Keefe, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Larry Gomez
  Acting United States Attorney
Michael H. Hoses
  Assistant United States Attorney
U.S. Attorney's Office
District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Defendants*