IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEVERLY FARLEY,

       Plaintiff,

vs.                                 No. CIV  05-1219 JB/LFC

MICHAEL O. LEAVITT, SECRETARY
of the U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES, and CARLA
BAHA-ALCHESAY, in her individual and
official capacity, and TIMOTHY BEGAY
in his individual and official capacity, and
SUZANNE KRAUSE, in her individual
and her official capacity.

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Dismiss Count III of Plaintiff's

Claims Pursuant to Fed. R. Civ. P. 12(b)(1), filed August 6, 2007 (Doc. 47).  The Court held a

hearing on the motion on November 26, 2007.  The primary issue is whether Plaintiff Beverly Farley

exhausted her administrative remedies before filing suit in federal court.  Because the Court believes

that Farley failed to exhaust her administrative remedies before filing suit in federal court, and

because the Court believes that none of Farley's explanations for her failure to exhaust her

administrative remedies appropriately allow the Court to waive exhaustion of administrative

remedies, the Court will grant Defendants' Motion to Dismiss Count III of Plaintiff's Claims.

## FACTUAL BACKGROUND

Farley, a Native American, is currently employed as a Registered Nurse for the Northern

Navajo Medical Center in Shiprock, New Mexico. See Complaint for Violations of 42 U.S.C.

Section 1981 & 1985, and Employment Discrimination of the Basis of Race and Retaliation, ¶ 12, at 3,  filed November 22, 2005 (Doc. 1)("Complaint").  Defendant contends that in late Spring of 2002, Farley and Steven Miller, M.D. ("Miller"), a white physician employed by the Medical Center, began a relationship.  See Memorandum in Support of Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1)  ¶ 2, at 3, filed August 6, 2007 (Doc. 48)("Motion to Dismiss Count III"). The Defendants allege that, at the time the relationship began, Miller was married to Jeanne Parker and Farley was married to Herman Farley, her common-law spouse of over twenty years. See id. Farley contends that she began a relationship with Miller in 2003, but that she was separated from her common-law husband at that time. See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Count III and Defendants' Motion for Summary Judgment on Count III at  ¶ 2, at 2-3, filed September 4, 2007 (Doc. 53)("Plaintiff's Response").  Farley also contends that Miller was divorced from his wife in early 2003. See id.

On December 16, 2003, Herman Farley distributed flyers throughout the Medical Center exposing his wife and Miller's relationship.  See Motion to Dismiss Count III  ¶ 3, at 3.  Farley admits, that at that time, she and Miller were in an relationship, but denies that she was having an affair.  See Plaintiff's Response ¶ 3, at 3.  Farley alleges that, after the relationship was made public, the Medial Center's administration and staff treated her differently.  See Motion to Dismiss Count III  ¶ 4, at 4.

On March 28, 1999, the Laborers' International Union of North America ("LIUNA") and the Navajo Area Indian Health Services ("IHS") entered into a collective bargaining agreement ("CBA") under  the authority granted by the Civil Service Reform Act of 1978.  See Motion to Dismiss Count III ¶ 5, at 4.  Under the CBA, IHS recognized LIUNA as the exclusive representative

for all IHS bargaining unit employees at the Crownpoint, Chilne, Fort Defiance, Gallup, Kayenta, Tuba City, and Winslow Service Units, and for all nonprofessional employees employed by IHS and assigned to the Dzilth-Na-O-Dith-Hle Health Center in Bloomfield, New Mexico. See id. On August 25, 1999, the CBA was amended to expand the scope of LIUNA's representation to include all professional employees employed by IHS at the Medical Center in Shiprock, New Mexico. See id. ¶ 6, at 4.

In 2004, Farley was an employee covered by the provisions of CBA. See id. ¶ 7, at 4. Article XX, Section 5 of the CBA provides:

> An aggrieved employee affected by discrimination on account of age, sex, race, creed, national origin, or marital status may raise the matter under a statutory procedure or the negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his/her option to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance.

Id. ¶ 8. at 4. Article XX, Section 8 of the CBA describes the three-step grievance process for employees. See id. ¶ 9, at 5. Step 3 of the process provides:

> If the Second Step decision is not satisfactory, either party may request the Federal Mediation and Conciliation Service (FMCS) to arrange for a meeting to resolve the grievance. The request must be made within twenty work days after receipt of the step 2 decision. If the grievance is not resolved through the use of mediation, the Union must request arbitration with [sic] twenty work days from the date that mediation attempts ended. If mediation is not requested, the Union has twenty work days from the receipt of the step 2 decision to request arbitration.

Id. ¶ 10, at 5.

Farley contends that she had initially attempted to file an EEO charge of discrimination in early March 2004, but was told by the EEO Counselor, Timothy Begay, that she did not have an EEO case. See Plaintiff's Response ¶ 11, at 3. Farley contends that she asked Begay to assist her in filling an EEO charge, but that Begay refused to assist her. See id. ¶11, at 3-4. Farley contends

that Begay told her to seek the Union's assistance.  <u>See</u> Plaintiff's Response ¶ 11, at 4.

Farley contends that she thought she had this conversation with Begay in the beginning of March 2004, and her handwritten notes regarding the conversation contain the date of either March 2 or March 20 of 2004.  <u>See</u> Plaintiff's Response ¶ 22, at 5-6.  The Defendants contend, however, that Begay was not at work on the afternoon of March 2, 2004.  <u>See</u> Motion to Dismiss Count IV, Exhibit 1, Declaration of Timothy Begay ¶ 7, at 3 (executed on May 16, 2007).  The Defendants further contend that EEO counselors do not "file charges of discrimination" for federal employees, nor do they have the power to do so.  <u>Id</u>.

Virginia Johnson, who worked as a secretary for Begay, alleges that Begay told her "Beverly Farley is messing around with a doctor, Dr. Miller. . . they have an EEO complaint . . . . They have complaints but they don't have witnesses.  They don't have the date and time, and there's no evidence."  Plaintiff's Response, Exhibit I,  Deposition of Virginia Johnson at 7:13-14, 18-19, 9:6-7 (taken April 30, 2007).  Farley contends that, "[d]espite repeated requests by Plaintiff, the Agency would not assist Plaintiff with filing an EEO charge until Congressman, the Honorable Tom Udall, sent a letter to the Agency."  Plaintiff's Response ¶ 32, at 7.

Approximately seven months later, on October 4, 2004, Farley filed a grievance under the CBA alleging discrimination.  <u>See</u> Motion to Dismiss Count III  ¶ 11, at 5.  The Defendants allege that, in Farley's grievance, she alleged discrimination on multiple bases: (i) marital status; (ii) gender resulting from her privacy being invaded; (iii) her relationship with Miller, a white physician employed at the Medical Center; (iv) harassment based on gender; (v) personal conduct not adverse to her on-the-job performance; (vi)  harassment by her supervisor, unfair treatment and ridicule on a daily basis; and (vii) race.  <u>See</u> Motion to Dismiss  ¶ 11, at 5.  The Defendants contend that

Farley's grievance concerned the alleged discriminatory harassment and the hostile-work environment to which she was subjected by her supervisor and co-workers starting in December 2003.  <u>See</u> Motion to Dismiss Count III ¶ 12 at 5. Farley contends that the reason she filed the Union grievance rather than the EEO Complaint was because Begay told Farley that he would not file any charge of discrimination on her behalf.  <u>See</u> Plaintiff's Response ¶ 12, at 4.

Before filing her Union grievance, Farley met with Mary Kenneth, a LIUNA Steward. <u>See</u> Motion to Dismiss Count III ¶ 13, at 6.  Kenneth contends that, during that meeting, she informed Farley that, if she filed a grievance, she could not thereafter file an EEO complaint covering the same matters contained in the grievance.  <u>See</u> Motion to Dismiss Count III, Exhibit 6, Deposition of Mary Kenneth at 21:6-25 (taken Sept. 15. 2006). Farley contends that she wanted the Union to assist her in filing an EEO charge.  <u>See</u> Plaintiff's Response  ¶ 14, at 4.  Farley asserts that she had her Union representative request that Farley be assigned to another EEO Counselor.  <u>See</u> Plaintiff's Response ¶ 14, at 4.

Shortly after the Union grievance was filed, Kenneth provided Farley's supervisor with a set of notes prepared by Farley, purportedly substantiating her claims.  <u>See</u> <u>id.</u>  On October 29, 2004, Julie Claymore, the Federal Sector Representative for LIUNA, sent a letter to Verly Fairbanks, Regional EEO Manager for the Navajo Area Region.  <u>See</u> Motion to Dismiss Count III ¶ 16, at 4. The Defendants contend that, on that same day, Fairbanks sent an e-mail to Timothy Begay requesting that he appoint an EEO counselor for Farley.  <u>See</u> <u>id</u>.

Fairbanks contends that, in early January 2005, John Hubbard, director of the Navajo Area-IHS, notified her that Claymore was still requesting counseling for Farley.  <u>See</u> Motion to Dismiss Count III, Exhibit 8, Declaration of Verly Fairbanks ¶ 3, at 1 (executed June 7, 2007).  Fairbanks

then called Claymore to find out what was going on.  See id.  Claymore informed Fairbanks that Farley did not want to meet with Begay because she did not like him and that Farley no longer needed an EEO counselor because she had decided to pursue her claims through the negotiated grievance procedure.  See id.

At that point, Fairbanks ceased all efforts to have a counselor assigned to Farley.  See id. Farley contends, however, that she requested an EEO counselor be assigned to her up until June 2005, when she filed her EEO complaint.  See Plaintiff's Response ¶ 17, at 5.

During the grievance procedure, the parties completed steps one and two, and proceeded to engage in mediation on February 3, 2005.  See Motion to Dismiss Count III ¶ 18, at 7.  The grievance was not resolved through mediation.  See id.  Neither the Union nor Farley submitted a request for arbitration.  See id. ¶ 19, at 7.  Farley contends that there was no arbitration demand because, in June of 2005, she was able to file the EEO charge that she had been demanding all along. See Plaintiff's Response ¶ 19, at 5.

On April 26, 2005, the Union presented an offer of settlement to the Shiprock Service Unit. See Motion to Dismiss Count III  ¶ 20, at 7.  On June 22, 2005 and September 28, 2005, the Shiprock Service Unit requested that the Union clarify its offer because a number of the provisions contained therein were, from the Unit's perspective, vague.  See Motion to Dismiss Count III, Exhibit 9, Declaration of Carla Baha-Alchesay ¶ 4, at 2 (executed on July 2, 2007). On August 21, 2005, the Union responded.  See id.

On September 28, 2005, Carla Baha-Alchesay, the Medical Center's CEO, sent a memorandum to Claymore rejecting the Union's offer.  See id.  In Baha-Alchesay's memorandum, she informed Claymore that management was willing to settle the grievance by complying with 5

U.S.C. and all other federal laws and regulations.  See id.  She also stated that, if she did not receive a reply to her settlement proposal by the close of business on October 7, 2005, the matter would be considered closed.  See id.

Baha-Alchesay never received a response to her September 28, 2005 memorandum.  See id. Farley contends that the Union did not continue pursuing the grievance because Farley was able to file an EEO charge.  See Plaintiff's Response ¶¶ 20, 21 at 5.

On June 20, 2005, Farley filed an EEO complaint with the Department.  See Motion to Dismiss Count III ¶ 26, at 8.  On July 7, 2005, the Department sent a letter to Farley, acknowledging receipt of her EEO Complaint.  See id. ¶ 27, at 8.  On July 29, 2005, the Department sent a letter to Farley seeking clarification of her claims.  See id. ¶ 28, at 8.

On August 24, 2005, Farley responded to the Department's letter of July 29, 2005.  See id. ¶ 29, at 8.  On September 8, 2005, the Department issued its decision dismissing Farley's claims. See id. ¶ 30, at 8.  The Department dismissed claims 1-7 pursuant to 29 C.F.R. 1614.107(a)(4) because Farley elected to file a Union grievance on those claims.  See Motion to Dismiss Count IV, Exhibit D at 6.  The Department dismissed claim 8 pursuant to 29 C.F.R. 1614.107(a)(1) because Farley's single allegation of inappropriate use or vulgar language does not render Farley an aggrieved person, and dismissed claim 9 pursuant to 29 C.F.R. 1614.107(a)(2) for failure to contact an EEO counselor within 45 days.  See id.

## PROCEDURAL BACKGROUND

On November 22, 2005, Farley filed her Complaint for Violations of 42 U.S.C. Section 1981 & 1985, and Employment Discrimination on the Basis of Race and Retaliation in Federal District Court. See Complaint, filed Nov. 22, 2005 (Doc. 1).  On August 6, 2007, the Defendants filed their

Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1).  See Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1), filed August 6, 2007 (Doc. 47).  The Defendants also filed a Memorandum in Support of their Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1). See Memorandum in Support of Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1), filed August 6, 2007 (Doc. 46)("Motion to Dismiss Count III").

The Defendants argue that Farley failed to exhaust her administrative remedies under the negotiated grievance procedure before seeking relief in district court and that she is therefore barred from seeking such relief.  See id. at 11.  The Defendants contend that Farley's election to proceed under the negotiated grievance procedure bars her EEO complaint and thus the Court is without subject-matter jurisdiction to address the merits of Farley's EEO complaint.  See id. at 14.

Farley filed a response in opposition to the Defendants' Motion to Dismiss Count III on September 4, 2007.  See Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Count III and Defendant's Motion for Summary Judgment on Count III (Doc. 53)("Plaintiff's Response"). Farley argues that she attempted to file an EEO Complaint, but that Begay refused to assist her in filing a complaint and told her to seek help from the Union.  See id. at 9.  Farley thus contends that she filed her Union grievance to force the Agency to assist her in filing her EEO Complaint.  See id.  Farley contends that she exhausted her administrative remedies with regard to her EEO complaint, that there was no need to proceed with the grievance, and that she was not barred from filing an EEO complaint.  See id.

On October 18, 2007 Defendants filed a reply to Farley's response.  See Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Count III (Doc. 58)("Defendants' Reply").

**APPLICABLE LAW RELATED TO MOTIONS TO DISMISS UNDER RULE 12(b)(1)**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. Proc. 12(b)(1). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002)(citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

Whenever it appears that the court lacks jurisdiction of the subject matter involved in an action, the court must dismiss the action. See Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988). "The party seeking the exercise of jurisdiction in his favor must allege in his pleading the facts essential to show jurisdiction." United States ex rel. Gen. Rock & Sand Corp. v. Chuska Dev. Corp., 55 F.3d 1491, 1495 (10th Cir. 1995)(internal citations and quotations omitted). In determining whether a party has adequately presented facts sufficient to establish jurisdiction, the court should look to the complaint's face, see Whitelock v. Leatherman, 460 F.2d 507, 514 (10th Cir.1972), accepting the well-pleaded factual allegations as true, see United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1203 (10th Cir.2001), but ignoring conclusory allegations of jurisdiction, see Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir.1971).

On a jurisdictional motion, the court can look at documents and evidence not contained in the pleadings. The court may consider evidence outside of the pleadings to determine whether subject matter jurisdiction exists: "Rule 12(b)(1) motions generally take one of two forms. The moving party may [i] facially attack the complaint's allegations as to the existence of subject matter

jurisdiction, or [ii] go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." <u>Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell</u>, 363 F.3d 1072, 1074 (10th Cir. 2004)(quoting <u>Maestas v. Lujan</u>, 351 F.3d 1001, 1013 (10th Cir. 2003)).

"When a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" <u>Davis ex rel. Davis v. United States</u> 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting  <u>Holt v. United States</u>, 46 F.3d 1000, 1003 (10th Cir. 1995)). "'In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].'" <u>Davis ex rel. Davis v. United States</u>, 343 F.3d at 1296 (quoting <u>Holt v. United States</u>, 46 F.3d at 1003). When, however, "'resolution of the jurisdictional question is intertwined with the merits of the case,' it is necessary to 'convert a Rule 12(b)(1) motion . . . into a [motion under] Rule 12(b)(6) . . . or . . . Rule 56.'" <u>Davis ex rel. Davis v. United States</u>, 343 F.3d at 1296 (quoting <u>Holt v. United States</u>, 46 F.3d at 1003).

"When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" <u>Davis ex rel. Davis v. United States</u>, 343 F.3d at 1296 (quoting <u>Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d 1320, 1324 (10th Cir. 2002)). "Exhaustion of administrative remedies is 'simply not an aspect of [a] substantive claim of discrimination.' The substantive issue in Plaintiffs' case is whether Plaintiffs were improperly denied CDIB cards, not whether a particular plaintiff has exhausted administrative remedies." <u>Davis ex rel. Davis v. United States</u>, 343 F.3d at 1296 (quoting <u>Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d at 1325). In

the United States Court of Appeals for the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action for employment discrimination under Title VII, "not merely a condition precedent to suit." Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005).

In Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court of the United States held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations is subject to waiver, estoppel, and equitable tolling." Id. at 393. The Tenth Circuit has distinguished between the timely filing of a charge with the EEO, which is not jurisdictional, and the failure to file a charge at all, which is jurisdictional. See Jones v. Runyon, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996).

"Equitable tolling or estoppel simply is not available when there are jurisdictional limitations." Shendock v. Director, Office of Workers' Comp. Programs, 893 F.2d 1458, 1466 (3rd Cir. 1990). "Jurisdictional limitations and the policies which they embody must be honored even in the face of apparent injustice or an administrative agency's obvious misapplication or violation of substantive law." Brown v. Director, OWCP, 864 F.2d 120, 124 (11th Cir. 1989). A lack of appellate jurisdiction mandates "an inability to act, not merely in unappealing cases, but in compelling cases as well." National Black Media Coalition v. FCC, 760 F.2d 1297, 1300 (D.C.Cir. 1985). Jurisdictional legislation must be observed even though "a harsh result" may be obtained. See Torres v. Oakland Scavenger Co., 487 U.S. 312, 318 (1988); Hallstrom v. Tillamook County, 493 U.S. 20, 31 (1989) ("As a general rule, if an action is barred by the terms of a statute, it must be dismissed."); Hart v. J.T. Baker Chem. Co., 598 F.2d 829, 832 (3d Cir. 1979) ("Where the filing requirements are considered 'jurisdictional,' non-compliance bars an action regardless of the equities

-11-

in a given case.").

**EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII**

Title VII of the Civil Rights Act of 1964 prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff may use direct evidence or indirect evidence, with a burden-shifting method, to establish a case under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973); McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686 (7th Cir. 1991).

It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief. See McKart v. United States, 395 U.S. 185, 193 (1969). A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII claim in federal court. See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC or the Union with the first opportunity to investigate discriminatory practices, and enables them to perform their roles of obtaining voluntary compliance and of promoting conciliatory efforts. See Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). To exhaust EEO administrative remedies, an individual claimant must: (i) first and timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1).

-12-

To exhaust administrative remedies under the collective bargaining agreement of 1999 between IHS and LIUNA, the following steps must be completed: (i) an employee must file a grievance within fifteen work days after the alleged discriminatory act has occurred and submit the grievance to her department head which the department head is required to answer within fifteen work days from the date the grievance was received; (ii) if  the decision is unsatisfactory, the employee may file a Step 2 grievance with the Chief Executive Officer; (iii) if the Step 2 decision is unsatisfactory, either party may request the FMCS to arrange for a meeting to resolve the grievance; (iv) if the grievance is not resolved through the mediation, the Union  must request arbitration within twenty work days from the date mediation attempts ended; (v) if mediation is not requested, the Union has twenty days from the receipt of the Step 2 decision to request arbitration; (vi) in the event that the arbitrator issues a decision adverse to the employee, he or she may appeal that decision to the Federal Labor Relations Authority and then to the  EEOC, or may appeal directly to the EEOC; (vii) once the EEOC issues its decision on the appeal, the employee may file a civil action in district court within 90 days of receipt of the decision.  See Motion to Dismiss Count III, at 12.

## LAW REGARDING ELECTION OF REMEDIES

Congress passed the Civil Service Reform Act of 1978 ("CSRA") with the hope to increase the efficiency of the federal government by allowing collective bargaining in the federal workplace. See Cornelius v. Nutt, 472 U.S. 648, 666 (1985).  The collective bargaining agreements resulting from CSRA "shall provide procedures for the settlement of grievances, including questions of arbitrability," and "the[se] procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage."  5 U.S.C. § 7121(a)(1).  There are several exceptions,

however, to this exclusivity requirement.

One of those exceptions is found in 5 U.S.C. § 7121(d), which addresses a special subcategory of "mixed" employee grievances that involve both unfair labor practice and unlawful discrimination.  A "mixed case" is "a case that involves a challenge to a managerial decision that is appealable to the [Union] as well as a claim of employment discrimination." <u>Vineratos v. United States</u>, 939 F.2d 762, 766 n.2 (9th Cir. 1991).   The federal employees covered by collective bargaining agreement who fall under the exception in 5 U.S.C. § 7121(d)  have two avenues for administratively exhausting their claims of discrimination.

5 U.S.C. § 7121(d) explains these two options:

(d) An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, <u>but not both</u>. . . . Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

5 U.S.C. § 7121(d)(emphasis added).  Under the Civil Service Reform Act, "[a]n employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first." 5 U.S.C. § 7121(d). The EEOC's regulations provide that an election to proceed under the statutory procedure is made by the filing of a written complaint.  <u>See</u> 29 C.F.R. § 1614.301(a).

-14-

An employee's use of the pre-complaint process as described in 29 C.F.R. § 1614.105 does not constitute an election of the statutory procedure. See id. An employee is deemed to have elected to pursue the negotiated procedure when he or she timely files a Union grievance. See 29 C.F.R. § 1614.301(a). 5 U.S.C. § 7121(d) requires a federal employee to pursue his or her "matter" through either the statutory procedure or the negotiated grievance procedure, "but not both." Vinieratos v. United States, 939 F.2d at 767-68.

An employee's election of the statutory procedure or the grievance procedure is irrevocable. See Vinieratos v. United States, 939 F.2d at 768. "Once an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedies provided by that procedure." Douglas v. Norton, 167 Fed.Appx. 698, 707 (10th Cir. 2006). See Johnson v. Peterson, 996 F.2d 397, 399 (D.C. Cir. 1993); Vinieratos v. United States, 939 F.2d at 768-69; Smith v. Kaldor, 869 F.2d 999, 1005 (6th Cir. 1989). The election only applies, however, if the employee's complaint "falls under the coverage of the negotiated grievance procedure." 5 U.S.C. § 7121(d).

If an employee files a grievance under the negotiated grievance procedure, that employee may not thereafter file an EEO complaint on the same matters raised in the grievance regardless of whether the agency has informed the employee of the need to elect or whether the grievance has raised an issue of discrimination. See 29 C.F.R. § 1614.301(a). The term "matter," as described in 29 C.F.R. § 1614.301(a), refers to conduct underlying an employee's claim as opposed to the specific legal allegations in the claim itself. Wright v. Snow, No. 02 Civ. 7615 (TPG), 2004 WL 1907687, at *5 (S.D.N.Y. Aug. 25, 2004). See Guerra v. Cuomo, 176 F.3d 547, 550-51 (D.C. Cir. 1999); O'Dwyer v. Snow, No. 00 Civ. 8918, 2004 WL 444534, at *9 (S.D.N.Y. March 10, 2004). A grievance and an EEO complaint can refer to the same matter regardless of the legal theory on

which the action is challenged.  See Giove v. U.S. Dep't of Transp., 178 Fed.Appx. 814, 818 (10th

Cir. 2006).  "Too narrow a definition of 'matter' would frustrate the election provisions of § 7121(d)

. . . . Too broad a definition of 'matter' would create a trap for the unwary grievant."  Facha v.

Cisneros, 914 F.Supp. 1142, 1148-49 (E.D.Pa. 1996).

In Nouraie v. Sullivan, 61 F.3d 912 (9th Cir. 1995), the United States Court of Appeals for

the Ninth Circuit held that Nouraie could not pursue an EEO complaint after he had chosen to

challenge his termination through the grievance procedure.  See id. at *3.  Nouraie's employment

was terminated on February 2, 1990.  See id. at *1.  Nouraie challenged the termination through the

negotiated Union-grievance procedure, losing at every stage, but exhausting his grievance rights.

See id.  After Nouraie had completed his grievance procedure, he filed an EEO complaint on the

same manner.  See id.  The Ninth Circuit affirmed the district court's decision that it lacked

jurisdiction under Title VII to consider Nouraie's claims, because by filing a grievance before an

EEO complaint, Nouraie elected to challenge his termination through the grievance procedure and

thus was precluded from challenging his termination under Title VII.  See id. at *3.

Similarly, in Manios v. West, 64 Fed.Appx. 34 (9th Cir. 2003), the Ninth Circuit affirmed

the decision of the district court, holding: "We agree with the district court that Manios's election

of his Union grievance procedure limits the availability of any statutory remedies."  Id. at 35.  The

Ninth Circuit emphasized that "a federal employee who alleges employment discrimination must

elect to pursue his claim under either a statutory procedure or a Union-assisted negotiated grievance

procedure; he cannot pursue both avenues, and his election is irrevocable." Id. (internal citations and

quotations omitted).  Manios argued that he should be entitled to a judicial review of the denial of

his grievance, but the Ninth Circuit held that Manios failed to exhaust his contractual remedies by

-16-

not proceeding to arbitration.  See id.  The Ninth Circuit noted that abandonment of one process to pursue another avenue of relief constitutes a failure to exhaust.  See id.  Furthermore, the Ninth Circuit stated that there was no merit to Manios' argument that his subsequent filing with the EEOC somehow revoked his prior election of remedies and resurrected his discrimination claims.  See id.

In Vinieratos v. United States, the Ninth Circuit held that Vinieratos' initial election to file an EEO complaint was irrevocable.  See 939 F.2d at 769.  The Ninth Circuit held "[a]bandonment of that process in order to pursue another avenue of relief constituted a failure to exhaust the one appropriate administrative remedy he had selected." Id. (citing Smith v. Kaldor, 869 F.2d 999, 1003-1004 (6th Cir. 1989); Jones v. Dep't of Health and Human Servs., 622 F.Supp. 829, 831-32 (N.D.Ill. 1985)).  After supplementing his EEO complaint several times, Vinieratos attempted to take the first step in the negotiated grievance procedure.  Although he expressed a desire to place primary reliance on the EEO process when he initially filed his EEO complaint, he expressed a contrary desire in a note he gave to his EEO counselor at a later date.  See Vinieratos v. United States 939 F.2d at 769. For a period of time, Vinieratos focused his attention on his negotiated grievance procedure and indicated his desire that the EEO proceedings be deferred to the negotiated grievance proceedings. See id. at 770.  He then turned his attention back to his EEO complaint and requested that the grievance proceedings defer to the EEO proceedings.  See id.  The Ninth Circuit held that, while any one of Vinieratos' acts alone may not suggest abandonment, the overall pattern of his conduct clearly did.  See id. at 770.  The Ninth Circuit stated that the administrative record of this case "chronicled the efforts of a litigant who sought to pursue as many avenues of relief as possible, hoping to stay proceedings in one forum when prospects for relief appeared brighter in another, but acting to revive what he formerly put on hold when the effort of the moment appeared on the verge

-17-

of a dead end." Id.  Under such circumstance, Vinieratos was not deemed to have satisfied what the

Supreme Court described as the "'rigorous administrative exhaustion requirements' of Title VII."

Id. (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 833 (1976)). The Ninth Circuit noted that

the Third, Seventh and the Ninth Circuit have held that "abandonment of the administrative process

may suffice to terminate an administrative proceeding before a final disposition is reached, thus

preventing exhaustion and precluding judicial review." Id. (citing Rivera v. United States Postal

Service, 830 F.2d 1037 (9th Cir. 1987)(finding that, once a party appeals to a statutory agency,

board, or commission, the appeal must be exhausted, and to withdraw is to abandon one's claim and

thus fail to exhaust one's remedies.); Purtill v. Harris, 658 F.2d 134 (3d Cir. 1981)(stating that

"[a]llowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate

the ability of the agency to deal with complaints.  All participants would know that at any moment

an impatient complainant could take his claim to court and abort the administrative proceedings .

. . . [S]uch a course would unnecessarily burden cases that otherwise might be terminated

successfully by mediation and conciliation."); McGinty v. United States Dep't of the Army, 900

F.2d 1114 (7th Cir. 1990)(upholding the district court's decision that, once a party has chosen the

administrative remedy, that remedy must be exhausted before filing a complaint in district court.).

     In Vinieratos v. United States, the Ninth Circuit held that "an administrative exhaustion rule

is meaningless  if claimants may impede and abandon the administrative process and yet still be

heard in the federal courts."  939 F.2d at 772.  The Ninth Circuit further stated: "When a federal

employee obstructs the smooth functioning of a properly elected administrative process and

abandons that process to pursue a remedy elsewhere, he fails to exhaust his chosen remedy and

thereby forecloses judicial review." Id.  The Ninth Circuit ultimately held that, because Vinieratos

abandoned his EEO process, the first administrative remedy that he elected, he did not properly exhaust his administrative remedies. See id. at 775.

In Collins v. Snow, No. 04-74628, 2005 WL 1342979 (E.D.Mich. 2005), the district court held that Collins' initial election to pursue a grievance procedure constituted an irrevocable election that prevented him from bringing those claims in a subsequent suit regardless of the EEO complaint he subsequently filed.  See id. at *5. It was undisputed that Collins was covered by a collective bargaining agreement between his Union and the Treasury Department, and that, pursuant to the terms of the Master Agreement, Treasury employees or their Union representatives could file grievances concerning alleged employment discrimination. See id.  It was likewise undisputed that, on February 22, 2002, Collins' Union representative filed a timely grievance that was ultimately resolved in Collins' favor, and that on June 26, 2002, four months after the Union grievance was filed, Collins filed a complaint with the EEOC regarding the same matter as the Union grievance. See id.  The district court found that it was undisputed that Collins initially elected to pursue this matter through the negotiated grievance process. See id.  The district court held, therefore,  that Collins was bound by that irrevocable election of remedies and could not now pursue the sex discrimination claims asserted in this subsequent action.  See id.  See also Guerra v. Cuomo, 176 F.3d at 548 (construing § 7121(d) and affirming the district court's decision dismissing the plaintiff's complaint on the ground that her "earlier decision to file a Union grievance constituted an irrevocable election of remedies."); Maddox v. Runyon, 139 F.3d 1017, 1021 (5th Cir. 1998) (observing that § 7121(d) precludes covered federal employees from pursuing both the EEO statutory procedure and a Union-assisted negotiated grievance procedure).

In Gill v. Summers, No. Civ.A. 00-CV-5181, 2001 WL 283150, Gill submitted multiple

grievances in accordance with the collective bargaining agreement's negotiated grievance procedure relating to his requests for reassignment and alteration of his work schedule. See id. at *4. Gill did not, however, fully exhaust the negotiated administrative procedure, because he failed to appeal the adverse arbitration decision to either the Federal Labor Relations Authority or directly to the EEO. See id. The district court stated: "District courts may apply principles of equitable tolling of statutes of limitation when determining whether to excuse a plaintiff's failure to exhaust administrative remedies." Id. at *5 (citing Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997)). The district court held that equitable tolling may be appropriate: "[i] where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; [ii] where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or [iii] where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Id. See Carlile v. South Routt Sch. Dist. RE 3-J, 652 F.2d 981, 985 (10th Cir.1981) (noting that equitable tolling may be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights.). In regards to applying equitable tolling to Gill's situation, the district court held: "The Court sees no basis for excusing Plaintiff's failure to exhaust his administrative remedies. . . . There is no evidence that Defendant misled Plaintiff as to his cause of action, or any extraordinary occurrence that prevented him from asserting his rights." Gill v. Summers, 2001 WL 283150 at *5. The district court stated: "Rather, Plaintiff claims that he relied on statements by Union officials that the Union could not help him and that he had exhausted all administrative remedies." Id. The district court held that such assertions were insufficient to justify excusing his failure to exhaust his remedies. See id.

    In Sullivan v. Harvey, No. 06-cv-00838-LTB-CBS, 2007 WL 763211 (D.Colo. March 9,

2007), aff'd by No. 07-1206, 2007 WL 2828895 (10th Cir. Sept. 28, 2007), the district court granted the defendant's 12(b)(1) motion and dismissed the plaintiff's claim for lack of subject-matter jurisdiction for failure to exhaust her administrative remedies.  See 2007 WL 763211 *4. The Defendants argued that Sullivan failed to timely exhaust her administrative remedies.  See id. at *4. Sullivan argued that the administrative time limits should be tolled, because of her mental impairment at the time she signed the negotiated settlement agreement regarding an EEO complaint she had previously filed.  The district court held that "'the administrative time limits created by the EEOC . . . are subject to equitable tolling, estoppel, and waiver.'"  Sullivan v. Harvey, 2007 WL 763211 at *5 (quoting Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir.1997)). See also 29 C.F.R. § 1614.604(c) (administrative time periods "are subject to waiver, estoppel, and equitable tolling").

        "'Federal courts have typically extended equitable relief only sparingly.'"  Sullivan v. Harvey, 2007 WL 763211 at *5 (quoting Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1991)). "'The Tenth Circuit has invoked the equitable tolling doctrine only in particularly egregious circumstances, such as when a plaintiff's reliance upon statements of a court or agency official or on a confusing right-to-sue letter caused him or her to commit procedural errors in the course of otherwise diligently pursuing a claim.'" Sullivan v. Harvey, 2007 WL 763211 at *5 (quoting Brucks v. O'Neill, 184 F.Supp.2d 1103, 1111 (D.Kan. 2001) (reviewing Tenth Circuit cases applying equitable tolling)). See also Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990) ("[F]ailure to comply with these time limits may be excused where the claimant actively pursues her judicial remedies by "filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by her adversary's misconduct into allowing the filing deadline to pass.");

Mosley v. Pena, 100 F.3d 1515, 1517 (10th Cir.1996) ("Equitable tolling may be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights")(internal quotations and citations omitted); Lorenzo v. Rumsfeld, 456 F.Supp.2d 731, 738 (E.D.Va. 2006) ("As the Fourth Circuit has recognized, the equitable tolling exceptions are truly narrow, thus, the government cannot be estopped from asserting the . . . time limit as a defense if plaintiff has made no showing of affirmative misconduct on the part of the government . . . .")(internal quotations and citations omitted); Harrison v. Potter, 323 F.Supp.2d 593, 601 (S.D.N.Y.  2004) ("[E]quitable tolling is usually reserved for those instances involving affirmative misconduct of the opposing party.")(internal quotations and citations omitted).  The district court  in Sullivan v. Harvey explained that, once the "defendant meets its burden of showing that the plaintiff failed to exhaust administrative remedies, the plaintiff then must plead and prove that his claims should be equitably tolled." 2007 WL 763211 at *5-6 (citing Harms v. Internal Revenue Service, 146 F.Supp.2d 1128, 1135 (D.Kan. 2001)).  See Herron v. Veneman, 305 F.Supp.2d 64, 72 (D.D.C.2004) ("Once the defendant meets its burden of proving that the plaintiff failed to exhaust administrative remedies, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense.").

Sullivan argued that the administrative time limits should be tolled on account of her mental impairment at the time she signed the negotiated settlement agreement.  See Sullivan v. Harvey, 2007 WL 763211 at *6.  The district court rejected her argument, stating: "'The Tenth Circuit has never held that mental incapacity entitles an individual to equitable tolling.'" Id. at *6 (quoting Uhey v. Potter, No. 03-WM-1603 (BNB), 2007 WL 135616 at * 6, (D.Colo. Jan. 16, 2007)).

The Tenth Circuit affirmed the district court's opinion in <u>Sullivan v. Harvey</u>, 2007 WL 2828895, agreeing that "exhaustion of administrative remedies is a jurisdictional prerequisite to instituting a Title VII action in federal court," but confirming that "[t]he time limits established by Title VII for initiating administrative remedies are not jurisdictional . . . and thus 'are subject to . . . equitable tolling.'" <u>Id.</u> at *3.  The Tenth Circuit further stated: "[W]e have expressly recognized equitable tolling of Title VII's time limitations only if the circumstances of a case rise to the level of 'active deception,' such as where a plaintiff has been 'lulled into inaction by her past employer,' or has been 'actively misled' or 'in some extraordinary way been prevented from asserting his or her rights.'" <u>Id.</u> at *3 (quoting <u>Biester v. Midwest Health Serv., Inc.</u>, 77 F.3d 1264, 1267 (10th Cir. 1996)). The Tenth Circuit ultimately held that Sullivan's circumstances did not meet the exceptional circumstances standard to merit equitable tolling. <u>See id.</u> at *3-4.

## ANALYSIS

While both sides of the dispute have submitted materials beyond the pleadings for the Court's consideration, no party has argued that the Court should convert this motion to one for summary judgment.  Nor need the Court convert the motion.  Exhaustion of remedies is a jurisdictional issue, and the Court may consider the record before it in determining that threshold issue.

## I.    THE COURT WILL NOT CONVERT DEFENDANTS' 12(b)(1) MOTION INTO A MOTION FOR SUMMARY JUDGMENT.

Unlike the Defendants' other 12(b)(1) motion, Farley does not specifically argue that the Court should treat the Defendants' motion as a motion for summary judgment rather than as a 12(b)(1) motion because the Defendants attached additional information to their Memorandum in Support of Motion to Dismiss. <u>See</u> Plaintiff's Response at 5. The Court, however, recognizes that

there are situations in which the attachment of documents converts a motion to dismiss into a motion for summary judgment.  Nevertheless, the Court does not believe that this is one of those situations.

The Court is in agreement with the Defendants that, when a party challenges subject-matter jurisdiction, the Court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts.  See Davis v. United States, 343 F.3d at 1296.  Moreover, "[i]n such instances, a court's reference to evidence outside pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment." Id.  Furthermore, the Court does not believe that resolution of the jurisdictional question in this case is intertwined with the merits of the case requiring the Court to convert the motion into a rule 56 motion.  The Tenth Circuit has held that "[e]xhaustion of administrative remedies is 'simply not an aspect of [a] substantive claim of discrimination,'" thus the Court need not convert this motion into a motion for summary judgment. Id. at 1296.  Furthermore, the Tenth Circuit, as recently as September of 2007 has stated that the "exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action for employment discrimination under Title VII," not merely a condition precedent to suit.  Sullivan v. Harvey, 2007 WL 763211 at *4.

## II.   FARLEY IRREVOCABLY ELECTED THE NEGOTIATED GRIEVANCE PROCEDURE AND FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

It is undisputed that, in 2004, Farley was an employee covered by the provisions of the collective bargaining agreement.  See Motion to Dismiss Count III ¶ 7, at 4; Plaintiff's Response ¶ 7, at 3.  It is therefore undisputed that Farley had the option to pursue her discrimination allegations by filing an EEO Complaint or by filing a   grievance pursuant to the collective-bargaining agreement.  Farley alleges that she talked to EEO counselor Begay on either March 2, 2004 or March 20, 2004, and requested his assistance in filing an EEO charge.  See Plaintiff's Response at

8-9.  No charge was filed at that time.  See id.  Farley alleges that Begay refused to help her file a charge and told her to seek help with her Union.  See id. at 8.

On October 4, 2004, approximately seven months later, Farley filed a grievance under the collective-bargaining agreement alleging discrimination on the basis of marital status, gender, and race.  See Motion to Dismiss Count III ¶ 11, at 5.  According to 5 U.S.C. § 7121(d), an employee is deemed to have elected to pursue the negotiated procedure when she timely files a Union grievance.  See id.  Furthermore, an employee is deemed to have elected to proceed under the statutory procedure when she files a written complaint.  See 29 C.F.R. § 1614.301(a).  According to these regulations, therefore, it is unquestionable that Farley elected to pursue the negotiated procedure by filing her Union grievance in October of 2004.  Her alleged meeting with Begay in March of 2004 did not constitute an election of remedies because she did not file a written complaint as required by the regulations.  See 29 C.F.R. § 1614.301(a).

The Court believes Farley's election to pursue her negotiated grievance procedure was irrevocable.  See Douglas v. Norton, 167 Fed.Appx. at 707 (stating that "[o]nce an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedies provided by that procedure.");  Vinieratos v. United States, 939 F.2d at 768 ;  Johnson v. Peterson, 996 F.2d 397, 399 (D.C. Cir. 1993).  The Court is not persuaded by Farley's argument that Douglas v. Norton is inapplicable because the Tenth Circuit did not find the election of remedies in that case irrevocable but rather dismissed the plaintiff's complaint because of his failure to timely exhaust his EEO administrative remedies.  See Plaintiff's Response at 10.  In Douglas v. Norton, the Tenth Circuit found that, because the collective-bargaining agreement expressly excluded Douglas' complaint from the scope of its grievance procedure, the election process in 5 U.S.C. § 7121(d) did not apply.

-25-

See id. at 707-708. Nonetheless, the Tenth Circuit still stated: "Once an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedy provided by that procedure." Id. Thus, regardless of the direct applicability of this principle to the decision in Douglas v. Norton, the principle is still sound and applicable to Farley in this case.

Furthermore, Farley argues that her election was not irrevocable and that she was not barred from pursuing an EEO claim under the Supreme Court's decision in Alexander v. Gardener-Denver Co., 415 U.S. 36 (1974). Farley quotes the following passage from Alexander v. Gardener-Denver Co.:

> That doctrine [election of remedies], which refers to situations where an individual pursues remedies that are legally or factually inconsistent, has no application in the present context. In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

Id. at 49. Farley also quotes the Supreme Court's statement that "Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." Id.

While this language from Alexander v. Gardener-Denver Co. has some force on first glance, this Supreme Court case is distinguishable from Farley's case. In Alexander v. Gardener-Denver Co., the issue was whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. See id. The employees in that case had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, thus the

arbitration in those cases understandably was held not to preclude subsequent statutory actions. See id.  Furthermore, the Court notes that the Supreme Court's decision in Alexander v. Gardener-Denver Co. predates Congress' enactment in 1978 of the Federal Labor Relations Act, which governs Farley's case.  Furthermore, Alexander v. Gardener-Denver Co.  is not a case construing 5 U.S.C. § 7121 of the Federal Labor-Management Relations Act, which is the key section applicable in Farley's situation.   Under 5 U.S.C. § 7121, a federal employee who alleges employment discrimination must elect to pursue his claim under a statutory procedure or under a negotiated grievance procedure, but not both.  See 5 U.S.C.  § 7121.

The Court believes that the situations governed by 5 U.S.C.  § 7121 are different situations than the one in Alexander v. Gardener-Denver Co..  In Alexander v. Gardener-Denver Co., the Supreme Court examined a situation in which "the relationship between the [statutory and contractual] forums [was] complementary since consideration of the claim by both forums may promote the policies underlying  each." Id. at 50-51.  In Farley's case, the two forums are not complimentary in the same sense; rather, the two forums serve the same purpose. A complainant, therefore, must select to proceed under only one of the two forums, not both.

Furthermore, the Tenth Circuit has expressly held that such an election of remedies, as made by Farley, is irrevocable.  See Douglas v. Norton, 167 Fed.Appx. at 707. The Supreme Court's language in Alexander v. Gardener-Denver Co. cannot fairly be read to render § 7121(d) or  the regulations set forth in 29 C.F.R. § 1614.301(a) unenforceable.  Additionally, Alexander v. Gardener-Denver Co. was subsequently overruled by Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), in which the Supreme Court recognized that statutory claims can be subject to arbitration under the Federal Arbitration Act and other statutory provisions.

Farley also argues that her election was not a true election as defined by law, because the EEO's actions forced her to pursue the negotiated grievance procedure. See Plaintiff's Response at 11. Furthermore, Farley notes that, during the grievance procedure, she continued to pursue her election to file an EEO charge, requested that the Union assist her in filing an EEO charge, and then ceased her negotiated grievance once she was able to file her EEO charge. See id. The Court notes that Farley cites no law to support why these contentions should excuse her from exhausting her administrative remedies. Furthermore, the Court notes that, contrary to Farely's contention, the law specifically defines Farley's actions, the filing of a Union grievance, as an election of remedies. See 5 U.S.C. § 7121(d).

Because the Court believes Farley's election to pursue the grievance process to be a true and irrevocable election, Farley was obligated to fully exhaust her claims under the negotiated grievance procedure before seeking relief in district court. See O'Dwyer v. Snow, 2004 WL 444534 at *7; Vinieratos v. United States, 939 F.2d at 769 (holding "[a]bandonment of that process in order to pursue another avenue of relief constituted a failure to exhaust the one appropriate administrative remedy he had selected.")(citing Smith v. Kaldor, 869 F.2d 999, 1003-1004 (6th Cir. 1989)). Farley failed to do so. Farley completed the first two steps of the grievance process, but then failed to demand arbitration pursuant to Article XX, Section 8, step 3 of the collective bargaining agreement as the final step in the negotiated grievance process. See Motion to Dismiss Count III, at 12. Farley contends that she did not continue her grievance complaint once she filed her EEO complaint because the purpose of the grievance had been fulfilled and that there was thus no need to proceed with arbitration under the grievance procedure. See Plaintiff's Response at 9. Again, Farley cites no law to support her ability to pursue both remedies simultaneously or to support her choice to

abandon her grievance procedure because the EEO fulfilled the same purpose.  Farley's reason for

abandoning her grievance claim bolsters one of the reason why a complainant may only choose one

of the two administrative remedy procedures -- both processes accomplish the same goals.

Regardless of Farley's reason for failing to exhaust her grievance claim procedures, she did not

comply with the regulations and thus is barred from judicial review by this Court.

Furthermore, Farley does not dispute that her grievance and her EEO Complaint involved

the same matter.  That Farley exhausted her administrative remedies regarding her EEO claim is

immaterial, because she abandoned her elected negotiated grievance and failed to exhaust her

administrative remedies.  Under the relevant statute it is clear that Farley had to select either the

grievance process or the EEO process, but not both.  See 5 U.S.C. § 7121(d).  Instead of selecting

one method, Farley selected both and then chose to exhaust only her EEO procedure remedies.  The

Court, therefore, lacks subject-matter jurisdiction over Farley's claims, because, by abandoning her

initial election, she failed to exhaust her administrative remedies.

III.    **EVEN IF EQUITABLE WAIVER OF EXHAUSTION OF ADMINISTRATIVE REMEDIES WERE APPROPRIATE, FARLEY'S ARGUMENTS ARE NOT SUFFICIENT FOR SUCH WAIVER.**

Because the Tenth Circuit has held that the issue whether Farley exhausted her

administrative remedies is a jurisdictional issue, see Shikles v. Sprint/United Management Co., 426

F.3d at 1317, the Court does not believe that Farley can properly make equitable arguments why she

was not required to exhaust her administrative remedies,  see Shendock v. Director, Office of

Workers' Compensation Programs, 893 F.2d 1458 (stating that "[e]quitable tolling or estoppel

simply is not available when there are jurisdictional limitations."); Brown v. Director, OWCP, 864

F.2d at 124 (noting that "[j]urisdictional limitations and the policies which they embody must be

honored even in the face of apparent injustice or an administrative agency's obvious misapplication or violation of substantive law.")   Furthermore, the Court notes that the Tenth Circuit most commonly applies equitable tolling in situations involving the timeliness of exhausting administrative remedies as opposed to situations involving the jurisdictional issue whether administrative remedies were exhausted. See Sullivan v. Harvey, 2007 WL 2828895 at *3 (noting that "[t]he time limits established by Title VII for initiating administrative remedies are not jurisdictional . . . and thus 'are subject to . . . equitable tolling.'")(quoting 29 C.F.R. § 1614.604(c)).

Even if the Court were to consider what appear to be Farley's equitable arguments, however, the Court does not believe that Farley meets the high bar set by the Supreme Court and other courts that would allow the Court to apply equitable principles to her failure to exhaust administrative remedies.  See Irwin v. Dept. of Veterans Affairs, 498 U.S. at 96 (stating "[f]ederal courts have typically extended equitable relief only sparingly."); Brucks v. O'Neill, 184 F.Supp.2d at 1111 (noting that "[t]he Tenth Circuit has invoked the equitable tolling doctrine only in particularly egregious circumstances, such as when a plaintiff's reliance upon statements of a court or agency official or on a confusing right-to-sue letter caused him or her to commit procedural errors in the course of otherwise diligently pursuing a claim."); Mosley v. Pena, 100 F.3d at 1517  (holding that "[e]quitable tolling may be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights")(internal quotation marks and citation omitted).   In Sullivan v. Harvey, the district court explained that, once the "defendant meets its burden of showing that the plaintiff failed to exhaust administrative remedies, the plaintiff then must plead and prove that his claims should be equitably tolled." See 2007 WL 763211 at *5-6 (citing Harms v. Internal Revenue Serv.,

146 F.Supp.2d at 1135.  See Herron v. Veneman, 305 F.Supp.2d at 72 ("Once the defendant meets

its burden of proving that the plaintiff failed to exhaust administrative remedies, the plaintiff then

bears the burden of pleading and proving facts supporting equitable avoidance of the defense.").

Farley's primary argument appears to hinge on her contention that she was forced to file a

grievance because the EEO counselor refused to assist her in filing an EEO complaint.  See

Plaintiff's Response at 9.  Farley states that, once she contacted the Union and filed a grievance, she

continued to request the Union assist her in filing an EEO charge.  See id.  Additionally, Farley

argues that, during the grievance procedure, she continued to pursue her election to file an EEO

charge and that, once she was able to file her EEO charge, she no longer pursued her grievance.  See

Plaintiff's Response at 11.

There are a number of problems with Farley's argument for equitable relief.  First, the Court

has been presented with conflicting evidence on whether the meeting between Farley and Begay

took place.  Begay stated in his declaration:

> It is my understanding that Farley is alleging that she met with me in my office
> during the afternoon of March 2, 2004.  It is also my understanding that she claims
> that she asked me to file a "charge of discrimination" on her behalf and that I refused
> to do so citing lack of evidence.  Those allegations are untrue.  First, I was not at
> work on the afternoon of March 2, 2004: I was out on sick leave . . . as an EEO
> counselor I do not file 'charges of discrimination' on behalf of employees.

Declaration of Timothy Begay at 3.

But even assuming, however, that the meeting occurred and Begay refused to file a charge

for Farley, the Court does not believe that Farley exercised due diligence in attempting to file her

EEO complaint.  Farley could have contacted one of the other two EEO counselors for help in filing

her EEO Complaint or re-contacted Begay.  According to the evidence presented to the Court, after

her meeting with Begay in March of 2004, Farley did not take any further action in pursuing her

claims until she sought help through the Union seven months later.

Furthermore, Farley's grievance that she filed with the Union did not indicate that she requested that an EEO counselor be assigned to her.  See Motion to Dismiss Count III, Exhibit 5, Grievance Form at 1.  Rather, Farley wrote that the settlement desired was "1) Full written disclosure by my supervisor and . . . others involved that the above discrimination has occurred. 2) Reprimand process to take place and followed through, Appologies [sic], permanent cessation of above." Id.  The Court acknowledges that it was presented with evidence that, after Farley filed her grievance, a LIUNA representative attempted to assist her in obtaining an EEO counselor.  See Motion to Dismiss Count III ¶ 16, at 4.  The Court also notes, however, that the issue whether the LIUNA representative was trying to assist her in filing an EEO charge on the same matters as her grievance is brought into question in Farley's deposition.  See Defendants' Reply to Plaintiff's Response, Exhibit D, at 66-68.[1]  Additionally, while Farley does not admit that she was told about

---

[1]Hoses:  Now, was Julie Claymore aware of the fact that you had filed this grievance?

Farley:  Yes, she was.

Hoses:  And yet she was still trying to get you an EEO counselor for the various claims you filed the grievance?

Farley:  Yes, she was.

Hoses:  Did she tell you that, or was she trying to get you an EEO counselor for things that happened after you filed your grievance because according to her, things had gotten much worse?

Farley:  Yes, they did.

Hoses: In fact, what she was doing is that after October 5th, when you filed the grievance, she was trying to get an EEO counselor for you and Dr. Miller, wasn't she?

her election of remedies, the deposition of Kenneth, Farley's Union Steward, states that she met with Farley before October 5, 2004 and informed her that, if she filed a grievance, she could not thereafter file an EEO complaint addressing the same matters.  See Motion to Dismiss Count III, Exhibit 6, Deposition of Mary Kenneth, at 21.  Finally, regardless of whether the agency informed Farley of the need to elect a procedure, the regulations clearly state that she may not file an EEO complaint on the same matters after filing a grievance under the negotiated grievance process.  See 29 C.F.R. § 1614.301(a).  Farley's argument that she was forced to file a grievance does not rise to the egregious level that would permit equitable waiver of her duty to exhaust her administrative remedies.

**IT IS ORDERED** that Defendants' Motion to Dismiss Count III Pursuant to Fed. R. Civ. 12(b)(1) is granted.

---

Farley:  Yes, she was.

Hoses:  Okay.  And that had to do with things that occurred after the filing of the grievance, correct?

Farley:  Yes.

Hoses: In fact, she alleged people were retaliating against you for having filed the grievances, correct?

Farley: Yes.

Hoses:  That's why you wanted to seek EEO counseling, to get the ball rolling?

Farley:  Yes.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Donald G. Gilpin
M. J. Keefe
Gilpin & Keefe, P.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Larry Gomez
  Acting United States Attorney
Michael H. Hoses
  Assistant United States Attorney
United States Attorney's Office
District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Defendants*